Good morning, and may it please the court. I'm Jared Kimball for the United States. We're at the appellants in this matter, and, you know, I would have We don't see that as often. I get confused as to who's getting up on what side here. I don't know where to sit as far as the counsel table. Right. Well, I guess you sat in your normal spot. That's what got me confused. But go ahead. I apologize. No, it's not your fault. I'm glad to be here and present this issue to the court this morning. If it pleases the court, could I reserve maybe three minutes for some rebuttal time? The issue before the court today I think is fairly well laid out by the briefing that both parties have provided, if I can say that. The narrow issue is, has the U.S. District Court, in this case Judge Shea in the Eastern District of Washington, has he too narrowly construed the issue of jurisdiction for purposes of an 18 U.S.C. 1001 prosecution, that is, making materially false statements in the jurisdiction of a Federal agency? This panel, I think, is well-situated to hear this case. Judge Schwarzer decided the Green case some time ago at the trial court level. Judge Fletcher also was involved in the Uramian case and also in Fittini. You cited the Uramian case in the briefs as far as I could see. I believe we did, Your Honor. I think both parties did. And I'll reference the decision on the record today. I don't think I want the Supreme Court to reverse it twice. Well, hopefully, we can avoid that. But it would direct the court, I think, to the principal issues of error on the part of the district court. And I think, as I look back at how the issue was argued at the trial court level, I think defense did a clever job of phrasing the issue in a way that led Judge Schaef to the conclusion he arrived at. The error that I would assign, if I could say that, to the way the district court processed the record was that the district court seemed to put weight and put creeds into the defendant's argument that the ability to administratively sanction Ms. Holstrom was critical. That is, Ms. Holstrom was an employee of the Battelle Institute. They operate the PNNL Laboratory, which is a DOE lab. The defense argued at the trial court level in our pre-trial hearing, and this is rehashed in her pleading over and over again on this appellate record, that somehow the law, and I sort of get even the Supreme Court standards, would require that the Department of Energy have an administrative sanction ability towards Ms. Holstrom to be able to terminate her, fire her, reprimand her, in order for the jurisdiction to lie as far as a 1001 prosecution. I've scoured the authority, I think, that is available to me, both in the Supreme Court and also at the Ninth Circuit. I find no support for argument whatsoever. The standard has never been that the agency who was lied to, here at the Department of Energy, has to be able to take action directly against that defendant administratively or to sanction them. The issue, as phrased by the Court Ficini, with Judge Fletcher's involvement, is whether or not the agency has ultimate authority to see that funds are properly spent. Well, suppose, take this hypothetically, the defense department makes a contract with a company to buy blankets. It turns out that one of the employees of the blanket company is cheating on its employer and filing false time cards. Is that a 1001 case? Well, I think it depends on the nature of the contract between those two. It's just a contract to buy blankets. I think it can't answer the question narrowly, Your Honor, because you have to look at whether the contract was as intense as the one between Battelle and DOE in this case. What do you mean? Meaning that the interaction, the interaction between DOE as an agency, Battelle as a contractor, the exchange of information, they have a basically mirrored accounting system. There's audit power. The DOE has automatic audit power of all the books that Battelle possesses. Virtually every government contract has an audit provision. I think that's probably a common feature, Judge. I don't know that it's as direct as has been laid out in the record in this case. To get back to your question, Judge Schwarzer, I do believe that in a vacuum, it might be hard for me to answer that question and say there would be jurisdiction over a false claim. But the proof's in the pudding. The proof's in the nature of the contract. Here, we have a record that the contract between DOE and Battelle allowed for a very broad, I guess, synchronization of their financial interaction. Well, that sounds like a kind of a generalization that's difficult to apply. What specifically is the element in the contract here that invokes 1001 jurisdiction? Well, I define power to act by power to see that funds are properly spent, which is the And as the Court knows from the record in this case, the clauses of the contract between DOE and Battelle are replete with references to oversight of funds, the way the counts are drawn down, and also the independent auditing and monitoring of the day-to-day functions of Battelle's financial operations. I understand, and I can reference the record, and I will in a moment, specifically to contract provisions, but the integrated automated system that's in place between creature and government contract, it appears as though that the accounts have to be set up so they run in a synchronicity of sorts, where there's monthly interaction with Battelle and DOE, oversight over expenditures, yearly reports that are finished. And as the Court is familiar with cases from different circuits, to wit, the Baker case, that ability to have reports generated by the agency back to the federal government was a critical component. So I can reference specific provisions if it pleases the Court. But I think the record is quite competent in asserting that this case and the facts that are present on the record are in a whole different league than the facts the Court had in asserting the Puccini case, different than Your Honor had in the Green case some time ago with the Nuclear Regulatory Commission, and certainly different than the cases that counsel has relied on so heavily, which are not Ninth Circuit cases, Blankenship and Lowe, whereas there was none of this connectedness in terms of the contract, connectedness in terms of oversight and auditing that's present in this record today. So the specific agency function that you rely on is the oversight or audit function? And, well, both. But also the Inspector General Act, 1978, which allows and actually commands OIG to inspect for fraud and waste with government contractors. That is power to act. If that's not power to act, I don't know what is. That's supplemented by the contract provisions, the auditing functions, the scrutiny of the books, and this reciprocity of data. None of these facts are present in the Blankenship and Lowe decisions. And it's unclear also in the Green decision that was really fleshed out. This Court found, in affirming Judge Schwarzer at the trial court level in Green, that jurisdiction lied in that case only where the Nuclear Regulatory Commission might rely on certifications by the employee of the contractor. He might rely. That record, compared to the record we have here, this is a far more abundant record of the interaction between the Department of Energy and its contractor and the extent to which DOE has final say over how funds are spent. So I would point to those two components. I think one of the other major considerations here, apart from my references that the standard has been, I think, misphrased or ill-phrased by the defense in terms of the ability to fire a misuse term or sanction it, that's not the legal standard. There's also some, I think, liberties taken with the access to information terms, which were drawn from the Ficini decision involving Judge Fletcher. Access to information in Ficini has to be considered on its facts. In that case, there were two groups of persons potentially defrauding the government of benefits. The first group applied through a state program in the state of Oregon. The feds only ever saw administrative functions. That's all they did. Basically, the federal government could draw statistics, I would think it's fair to say, probably demographic statistics, who's getting money, what kinds of people, ages, et cetera. It was simply a statistical administrative oversight. That is a far cry from what we have in the instant case. Access to information in the Ficini case, that first group of litigants, which this Court found there was no 1001 jurisdiction. It's no wonder this Court came down on that point. I guess I support the intrepid AOSA that tried to convince Judge Fletcher otherwise. I'm not sure I would have done that. It's a very thin record. This is a contrasted, very competent and abundant record. Very dissimilar from the scant administrative oversight that was at issue in the first group of the Ficini defendants. Here, the oversight is much more involved. And so efforts to minimize or I guess reduce the argument to this Department of Energy ability to audit, to conduct a criminal investigation, is just access to information in Ficini is a really disingenuous way to phrase it, because access to information in Ficini was very limited to what the facts of the Court had, which was a very limited access by the Federal government to data collected by the State. This is not that case. It's far different, and this record is much more compelling on that point. Counsel also, in her pleadings, makes reference to the fact that the – whether the defendant knew that she was necessarily going to perpetuate a fraud upon DOE or knew that her fraud would be within the jurisdiction of DOE is not a component. And the Urmian case, I think, addresses that to a certain extent, Judge Fletcher. But the Stanford decision, I believe out of the Seventh Circuit, which is cited both by Judge Shea in his opinion and in various other opinions, has some help on that point. The Stanford case says, true. You don't have to show the person knew that they were defrauding a Federal agency. They knew they were doing something in the jurisdiction of the Federal government. But Stanford also is very helpful in laying out that, however, in a case where the connection to the Federal government is overwhelming, that can be considered in terms of analyzing the connectedness of the Department of Energy or the Federal agency to the fraud at issue. And the record in this case, I think, is quite competent in that as you walk into the facility at issue here, you are bombarded with signage talking about it's a DOE facility, et cetera. Every day, Ms. Holstrom signed on to her computer, she was confirmed with a log-in screen, such as I am in my position, which I have to click on to go through and use the DOJ computer, saying you are entering a computer that is examined, it's property A of the Department of Energy, and your use of the computer will be monitored for potential criminal prosecution. So I would agree with Ms. Holstrom. Kennedy. But we're all monitored. We're all monitored in the use of our computers. Every time we open the computer, there's a red legend that says it's government property, you can't use it. It's illegal to use it for any other purpose. That doesn't seem very persuasive as a basis for 1001 jurisdiction. Well, it's not the only basis, Judge Schwarzer. My only point is that in looking at cases similar to this, which is a person like this defendant who, everywhere she went, it says DOE, her badge, the signs, her computer screen. My only point is that in looking at the connectedness of a 1001 jurisdiction, it has not been lost on other courts that the overwhelming indication that she is in a DOE facility using a DOE computer and is subject to their oversight is a component that may diminish or reduce the burden of showing the jurisdictional link. And it's just an equitable consideration. That's my only point. So we should be fact we should define jurisdiction based on equitable consideration? No, I don't say that. I'm really trying to understand your argument. Well, my point is that I don't believe we should define it by equitable consideration. Okay. But the equities are never lost on this court, and for good reason. The only reason I cite the Stanford case is to show that, in phrasing the issue, I have to demonstrate to the satisfaction of the trial court, and now to this court, in terms of the error of the district court judge, that jurisdiction was appropriate. The only reason I raise the Stanford decision, which Judge Shea did look at and rely on in part, is to show that in looking at whether the jurisdictional link is appropriate, that the act in question is within the authority of the agency, that they have final authority to see that the funds are properly spent. Answering that legal question, which is the proper standard, it's not improper, according to Stanford, to also look at the facts of the case in terms of how interconnected the defendant who perpetuated the fraud was to the agency. So if this particular employee had filed a false complaint against another employee, would that be covered by this statute? In other words, in the internal process that Battelle has, this employee filled out the form and complained about another employee, but it was just flat-out false. Is that under the statute? Well, I have to – I guess I can see some facts that might make it so, but I would say, on first blush, no, because – Why not? And what's the difference? The difference is that here, the issue of payment of monies is a critical part of the contract with Battelle and DOE. Monies are drawn directly from the United States Treasury, from what I estimate in this case to be a very unique financial arrangement. The monies are not – it's not a compensation after the fact type contract, where Battelle incurs fees and then seeks contribution back from the Federal Government. They draw directly from the U.S. Treasury through a bank. And so that includes the time card fraud. So it's a flow – it's a direct flow-through. I believe that it is. And that's a critical component. This – this Court, Judge Fletcher and Ficini found, is the second prong of why jurisdiction lied, being that the monies were drawn from the Federal FISC. That's not the only consideration. But on this record, looking at all the facts, you have this unique financial arrangement, where, Judge McEwen, your hypothetical about the fraud just between employees would be different. I don't think it – I don't think it draws in the overarching Department of Energy accounting structure or the draw of funds, whereas the submittal of a time card through the DOE website, by the way, those electronic time cards are processed and drawn directly out of Treasury funds, which is a consideration I think that's – is important. I see my time's up. I thank you for the Court's attention, and I'll reserve my arguments on rebuttal. Thank you. Good morning. Rebecca Pennell appearing on behalf of Tina Holstrom. I think the rule in this case can be summed up very simply, although it's obviously a complex case. But very simply, the Department of Energy does not have jurisdiction over employee time card procedures of a contractor. While the Department of Energy may be very involved in its contractor, Battelle, no rules are set with respect to how time is reported, with respect to whether or not if someone is an exempt employee, as Ms. Holstrom was, they have to work a certain number of hours per week to get their full pay. Those are all things that Battelle has rules for, Battelle Private Corporation, that the Department of Energy has not gotten involved with and, in fact, has said, Battelle, you are responsible for managing your employees, maintaining standards of conduct. We're not going to get involved. I think it's particularly important, because this is a criminal case, that a clear standard has been – is set. The government wants the Court to consider a standard that contains a lot of factors but not really a clear rule. Well, it's important that money's involved, but that's not the only factor. And it's important that government oversight's involved, but government oversight isn't always a factor, and that isn't the type of rule that lends itself well to criminal responsibility. Ginsburg. As I understand the facts, and correct me if I'm wrong, because of the unique relationship with Battelle, they were able to draw funds directly from the Treasury, and she was paid then directly from the United States Treasury. Well, it's not exactly clear, for one thing, even that that's true, because Battelle receives money from a number of sources, and the government's never put on any information with respect to where Ms. Holstrom's money came from. I think that DOE is Battelle, in the Tri-Cities, their number one source of income, but they do receive money from other sources. So even that's not clear. But Battelle's money is set pursuant to a budget. Ms. Holstrom's alleged fraud doesn't make a difference as to how much money Battelle gets. It's just easier to just say, okay, you have this much money, $10 million or whatever it is, in your budget, and you can withdraw directly from the Federal government for that money, instead of DOE advancing the funds ahead of time or paying after the fact. I actually think the government would have a stronger case if this were after the fact, because after the fact, DOE could say, we're not going to pay you for Ms. Holstrom's money. But if there – I mean, there is something intuitive where you would say, here's a prime government contractor that runs a national lab, which DOE is overseeing, and it sends money directly from the Federal government to the national lab. Why isn't that enough of a connection for when she makes a false statement and her money is coming directly from that relationship? It's not the standard. It's not the standard. It's not a power to act. The fact that the money comes from the Federal FISC isn't a power to act if DOE can't do anything about the payment of that money. And I think that the Fittini court has to be able to say, well, if – does DOE – was Department of Energy's ability to act, does it have to be simultaneous or can it be after the fact, such as through the IG audit, rejection of, you know, progress reports, that sort of thing? Correct. And so then you have to look at, well, what besides the flow of money is there? Can – what can DOE do about this money? What powers to act do they have? The OIG argument is circular. That would mean any time there's an inspector general investigation, whether or not that investigation had an independent basis, there's power to act. I don't think that that's enough. Furthermore, an inspection, an investigation, is accessing information. That's what someone does to access information. There are two entities that DOE could have power to act on, Battelle and Ms. Holstrom. The case law is not clear in this context what the power to act has to be on, whether it's DOE or Ms. Holstrom, although out-of-circuit case law, the low decision, the blanket shift decision says in the time card context there is authority. The low decision says it has to be on the employee. I think context is important. The audit function is conducted by the Department of Energy. Is that correct? In this case, it was done by Battelle. It could have been done by the Department of Energy. But it was done by Battelle. Battelle turned over this information. So the blanket shift talked about the case, and the Court has pointed out that it's usually the case with a government contract that there's oversight, financial oversight. All the government has pointed to with respect to power to act is super access to information. We can investigate, and we can ask questions, and we can have meetings. But that's not what this Court found power to act in Ficini. And I think it's important to consider what the Ficini said the power to act is, is if a false statement has the ability to pervert an authorized function of the Federal government, then the power to act is invoked. And I think that that is an important way to look at this case. In Ficini, the government had access to this information and could oversee the administrative structure of the Oregon program, and through that ability learned that the Oregon program was allowing for fraudulent claims to be made. The Federal government's ability to oversee the administrative structure wasn't perverted by the fact that there were false claims made. If anything, the Federal government's information was enhanced. An ability to look at what was going on in Oregon was enhanced by learning that Oregon's system wasn't set up so as to not take care of fraud. The very same is true in this case. In this case, the Department of Energy's authorized functions are to ask questions, to see audit reports, all of that. None of that is perverted by Ms. Holstrom allegedly submitting false time cards. In fact, the very purpose of the audit power is seen through by Ms. Holstrom's by the fact that the government learned of the false time cards. Through finding out that their Battelle structure allows for false time cards, Department of Energy's audit structure is enhanced because they learn more about Battelle and have more information with respect to future contracts with Battelle. They learn that Battelle's procedures for time card administration aren't tight enough, perhaps, and that maybe Battelle's not operating efficiently. But very interestingly in this case, what the Department of Energy would learn is that Ms. Holstrom, as set forth in the excess of records, had actually received outstanding employee reviews. She was getting the job done, and yet the audit showed that she wasn't working full time. So the government was able to learn through this investigation that Battelle's not operating efficiently. Battelle has full-time employees slotted for work that can be done on a part-time basis. There's no way in which the Federal government's ability to learn about how Battelle is operating efficiently was perverted by the false time cards. Now, let me ask this. What do we make of the fact that the laboratory belongs to the government? Correct. And Battelle is simply performing a function for the government to operate its laboratory. What do we make of that? Well, again, that doesn't give the Federal government the power to act. It would be a more fungible standard. The Federal government owns a lot of things. And I think that the Blankenship Court spelled out the sort of parade of horribles that could occur if we have a loose standard with respect to what power to act means. The Federal government owns computers in inner-city schools. The Federal government owns various pieces of property. Does that mean that a false statement at a park, a Federal park, is going to be necessarily 1001? Did you read the Urimian case? I did. And I did cite it. The Urimian case, this was an employee of the engineering company. And he lied to the engineering company about his background. He had a criminal conviction. And he said he had a criminal conviction. And that was found to be within the jurisdiction of the Federal government. Right. How do you distinguish? It's very distinguishable in that it was on his Federal security clearance. And that information, the Federal government, I think when we talk about contracts, there are certain things that the Federal government, and I think I talk about it in terms of the agency analysis, asks its contractors to make sure that it's in place. In the Green case, the Federal government asks Bechtel to make sure that the conduits — I'm forgetting the technical nature of the Green decision, but that the components for a level one nuclear area are met. And the Federal government defines what it's looking for. And that ability to define requirements for a nuclear one regulatory area is perverted when false statements are made to fit within that criteria. Similarly, in the Yermian case, the applicant lied on his security classification. The Federal government sets the standards for security classifications. And so the person wouldn't have been able to get that Federally-defined benefit if they hadn't have lied. And so, again, the Federal government's involvement was perverted by the false statement. In this case, had the Federal government's contract set up rules for time cards, we might be in a very different situation because then the false statements would go to something the Federal government has very specifically delegated to Bechtel to make sure that they comply with in very specific ways. But the Federal government didn't do that. So the Federal government's authorized functions in this case of financial oversight weren't perverted. The amount of money paid to Bechtel significantly — and this was a significant issue in the Ficini decision as well — that the amount of money paid to Bechtel doesn't differentiate — doesn't matter based on these false statements. Bechtel has its operating budget. Bechtel may be out money that it could have used for other things based on the false statements, but the Department of Energy isn't out any extra money based on the alleged false statements. And the Federal government very clearly is distancing itself from the acts of employees of its contractors, and that was the purpose of my citing the Autry case. And I think Judge Fletcher was involved in the Autry case as well. Certainly those of us that live near the Hanford Reservation are familiar with the Autry case. And Department of Energy says, look, we have our contractors supervise their employees, and they're responsible for making sure their employees are doing what they're doing. And I gave a hypothetical to Judge Shea at the time this case was heard in the district court of, what if Ms. Holstrom had been on fire duty and didn't show up? And because of her not showing up, she no one spotted a fire starting on the Hanford Reservation. Perhaps Bechtel was negligent in not making sure that its employees are showing up, and Ms. Holstrom might be liable for not showing up. But clearly, I can't imagine the government saying, oh, yes, in the circumstance of Bechtel, as opposed to the Autry case, we'll take responsibility, given that the DOE has delegated to Bechtel the tasks of making sure that its employees are working when they're supposed to be working, following certain rules, et cetera. The government distanced itself because it doesn't want to take on that responsibility, that micromanaging of employees. The fact that the federal government's not micromanaging the employees of its contractors has the reverse effect, that there's also not jurisdiction in this case. You don't have jurisdiction, not have jurisdiction over torts, and yet have jurisdiction over false statements. I think the two have to go hand in hand. And clearly, the Department of Energy has made a decision that it doesn't want to be, understandably, responsible for day-to-day management. Bechtel could have decided that Ms. Holstrom, as an exempt employee, just has to get the job done until we pay the same amount. And, in fact, she was an exempt employee. So the fact that she submitted time that she didn't work is really just an internal issue with Bechtel with respect to how they expect their exempt employees to fill their time. If she had, if her false statement had related to the substance of one of the contracts in terms of, you know, reporting what the nuclear level was or reporting the existence or nonexistence of certain isotopes at the plant or whatever, would that be covered under 1001? If it's reporting a standard that the contract requires, that a regulation requires, and Mr. Kimball doesn't like the fact that I worked out there, so I know there's lots of government forms to fill out, and if she's reporting, yes, you know, these safety criteria are met, and these are Federally regulated safety criteria, then, yes, 1001 jurisdiction would apply. It would pervert the government's interest in making sure those safety criteria are met for someone not to report those truthfully. And the fact that those statements are made to a conduit instead of directly to the I know for myself, as a defense attorney, it's very important, like I said at the outset, for there to be a bright line. As I read this Court's cases, in cases where there's not a direct statement to the Federal entity, there's always been that sort of conduit or agency analysis where the government has, in a benefits case, said, we're going to give you money to give to other people and here are the rules for that, or we're going to give you the responsibility for making sure people meet nuclear regulations, and we're going to give you the rules for that. And the person makes a false statement, then 1001 comes in, even though it's indirect. But I haven't seen a case out of this circuit finding 1001 jurisdiction outside of those circumstances. The government doesn't want to acknowledge that the circuits are in conflict. I think the circuits are in conflict on this issue, and the Blankenship case makes that very clear. And the Blankenship case, I think, very clearly supports what we're – our position is and is the most recent substantive circuit court decision in this area. I think that one mistake that the circuit courts have made is on the word, the government's interest in making sure that Federal funds are properly spent. When the government sets the rules for spending money, like this – these benefits have to be laid out in this way, or if DOE had said you have to use this money to pay your employees in this way and they have to report in those ways, then the government has set out what is proper and improper, and there is the power to act. The government's actions, authorized authority in setting forth those rules is perverted by the false statements. But to just say, well, the government, whenever we spend money, we want to make sure that we get our bang for our buck, so we have an interest in making sure that our funds are properly spent, I think that's misusing the word proper when the government hasn't clearly set forth the rules about what is proper and what is improper. Thank you. Thank you. Roberts. I would just say a couple of things in response to the comments that counsel has made. We draw from the jurisprudence in this area the concept of a strained interpretation. I think that Uramian talks about that. I would say that counsel's interpretation of the Green decision, Judge Schwarzer's court, and also this court, and also the interpretation of the Autry decision are strained. Counsel argues that the Green case is a conduit or agency case. And the court knows the facts of Green, but I'll state them, which was that the contractor in the case was Bechtel. They had a sub named Concam who certified codings on implements for use in the nuclear facility. In that case, there's no suggestion that the Nuclear Regulatory Commission delegated to Bechtel to require Concam and turn their employee to take action or to make representations. Counsel has termed that relationship as an agency or conduit dynamic. It's not true. In that case, Concam and their quality assurance person, Mr. Green, were trying to get the contract. They were trying to get onto the train. And in order to pursue that, they sought out to impress upon Bechtel and to impress upon ultimately the NRC that they had the qualifications to get onto this contract. It's exactly opposite from what counsel has argued. There's no indication that it came down from the NRC to go to Concam, to go to Mr. Green to say, certify these codings as appropriate. It's inverted. So it's absolutely untrue to say that in the Ninth Circuit, they're all agency or conduit cases, because that's not fair assessment. The Autry decision is unique, I think, and is important to discuss. Counsel has tried to say, well, since the Ninth Circuit in Autry found that under the Federal Tort Claims Act that the independent contractor exception applied, basically allowing for or disallowing the plaintiff's request for, I guess, damages and for funding negligence. In order to strike that, the counsel's argument that because the Court found the way it did in Autry, it can't now reverse Judge Shea is an absolutely erroneous argument. The analysis of whether or not under independent contractor law, there's liability for the Federal government for the acts of a contractor is a fundamentally different analysis for criminal liability for crimes committed while you're working as an employee at a contractor working for DOE. Thank you. Mr. Kimball, we've kind of let you extend your time fairly significantly. But I think we have the arguments pretty well in mind, both from today. There's a yes or no answer here, I guess, which doesn't happen all the time. And we appreciate the briefing and the argument. Thank you for listening.
judges: B. Fletcher, McKeown, Schwarzer